## No. 1276.

### Felix Mestayer vs. Sinson Corrigé.

38 707
d104 603

1. An ordinance of a municipal corporation, authorizing the exaction of certain rates, fees, charges and tariffs from each and every person selling articles within its corporate limits. but *without* the market-house or market-place; or person keeping a butcher's stand *within* the corporate limits, but *without* the market-place, or market-house, for the purpose of raising *revenue*, is one exacting a " tax" or "license " for revenue, and same cannot be enforced as contributions sought to be raised by the exercise of the police power delegated to it.

2. The taxing power of a municipality is its only power for obtaining revenue, by exactions levied on its citizens, and that power is limited to the *ad valorem*, or property tax, and the license tax; and any statute or municipal ordinance authorizing a levy beyond the constitutional limitation is null and void.

Mestayer vs. Corrigé.

APPEAL from the Twenty-first District Court, Parish of Iberia. *Gates*, J.

### *R. S. Perry* for Plaintiff and Appellant:

A charge or fee on sale of marketable commodities imposed by a municipal corporation for purposes of revenue, are not legal. If imposed under the police power, for police purposes, they are legal.

The police power of the State, as to exclusively local matters and subject to the restrictions of constitutional limitations, may be delegated by the General Assembly to the local authorities.

The markets are peculiarly an object for police regulation.

Article 19 of the charter of New Iberia, adopted in 1886, pursuant to Act 110 of 1880, confers plenary power of supervision and control of markets on the board of trustees.

The right to collect a daily fee for each stall is maintainable. 34 Ann. 1051, *et seq.*

The town ordinance of 10th August, 1885, expressly imposes a charge of twenty-five cents on each stall in the corporation market-house.

Article 19 of the charter authorizes the board to permit outside stalls and stands, only on condition they shall pay same charges as are paid by stalls in the corporation market-house.

By establishing a stall outside the corporation market, Courrégé has accepted that condition and has agreed, tacitly, at any rate, to pay the charges legally imposed on stalls in that market. The case of Blaser, 36 Ann. 363, is not applicable.

The collection of fees legally imposed by the board may be imposed by forfeitures and fines, which may be collected by ordinary suit, as is provided by ordinance of 10th August, 1885. 34 Ann. 1051.

Article 19 of the charter conferred such authority on the board. 34 Ann. 1051; 30 Ann. 1003; 32 Ann. 1278; Dillon on Corporations, 3d edition, §§ 432, 433, *et seq.*

### *T. D. Foster* and *E. Simon* for Defendant and Appellee:

1. *Political corporations have no inherent power to levy a tax.* They must derive this power by grant from the Legislature, and it must be expressly conferred. See Cooley on Taxation, pp. 208, 396, 408; Cooley on Const. Limitation, pp. 191, 201; 33 Ann. 833; Dillon on Corporations, vol. 2, secs. 605, 606; Ibid, vol, 1, p. 396.

2. The right to make all needful regulations under the police power, give no right to tax for revenue. Dillon on Corporations, vol. 2, pp. 709, 710, sec. 609; 34 Ann. 1050.

3. License laws are of two kinds. First, those for raising a revenue; second, those for police regulation. The first include the exercise of the power of taxation, and, in this State, those of every profession, trade or calling subject to pay a tax are graduated and governed by special laws, according to gross receipts. The second, viz: police power, cannot exceed the costs of issuing the license and the costs of regulating the business. Cooley on Const. Law, p. 586; 31 Ann. 829; Acts of General Assembly, 1881.

4. Political corporations cannot impose a greater license tax than is imposed for State purposes. Constitution 1879, art. 206; 34 Ann. 840.

  Nor can they impose a greater tax on property than the maximum limit allowed by the Constitution of the State. See Article 209 of State Constitution; 34 Ann. 840; 36 Ann. 363. .

5. The police power cannot be used for the purpose of raising revenue. See Dillon on Municipal Corporations, 3d ed., § 768; 34 Ann. 750, 1052.

6. To bring a charge, tariff or tax when levied within the scope of a police regulation, it must be shown that the amount thus levied is used exclusively for that purpose. 34 Ann. 1052; 36 Ann. 363.

The failure to do this establishes the charge, etc., to be a license tax for revenue, and if in excess of the license tax of the State it is unconstitutional and cannot be collected. In this case it is far in excess. See Ordinance of Board of Trustees, p. —; State Constitution, arts. 203, 206, 209; 34 Ann. 840; 36 Ann. 363.

7. An exaction and charge of a specified and fixed amount in money for the daily privilege of pursuing a business useful and necessary to the community and in no shape dangerous or vicious, is to be taken as one made and levied for revenue and not a police regulation. 34 Ann. 750, 1050; 36 Ann. 363.

The amount charged and levied in the ordinance being so extortionate and exorbitant, is itself evidence of the purpose to raise a revenue, to say nothing of the facts which disclose beyond question the purpose to be to raise a revenue, and divests it of all semblance of police power. 31 Ann. 828; Dillon on Mun. Corp. sec. 361, note § 386.

8. Such exorbitant and extortionate daily charges of specified amounts for every slaughtered animal is a license or tax, and is intended to raise a revenue, and in either instance is unconstitutional. 34 Ann. 1050; 36 Ann. 363.

9. The police power of the town of New Iberia cannot be exercised beyond that granted by the Legislature in its charter. What the town pretends to do as a police regulation must have been clearly granted by the charter. 36 Ann. 363; 29 Ann. 21, 261; 32 Ann. 923, 1293; 34 Ann. 750, 1051; Cooley on Const. Limitation, 191, 387; Dillon on Mun. Corp., 3rd ed., 141; Cooley on Taxation, 408.

10. When the power to exact money for police regulation is granted, it is more narrowly construed than that for revenue; and in all cases when it is granted it has always been restricted to a reasonable fee for issuing the "license." The power to make police regulations for the government of markets, etc., does not carry with it and include the power to exact money and license fees. See Cooley on Taxation, 408; Dillon on Mun. Corp. 3d ed., §§ 361, 357 (2d ed., § 291); § 768 (2d ed., 609); 538, note 1; 350, note 361; 34 Ann. 1050.

11. Political corporations have no right to enforce obedience to its ordinances unless that power has been expressly granted by the General Assembly, and no right to collect its revenues, whether taxes or license taxes, legal or illegal, by fine or imprisonment, unless that right is granted in its charter by the General Assembly. 6 Ann. 515; 34 Ann. 751; 37 Ann. —.

12. In determining the constitutionality of a town ordinance, the active effect of it must be considered, rather than the mere reading. The evidence establishes its active effect, and in the instant case shows beyond doubt that its object is to raise a revenue and is unconstitutional; because, if a tax on property it is in excess of the maximum limit; if a license tax, it is in excess of that levied by the State of Louisiana, and hence unconstitutional. See Constitution of the State of Louisiana 1879, arts. 209, 206; Acts of General Assembly 1881 (extra session), No. 4; 36 Ann. 363.

13. The case of the State of Louisiana vs. Louis Blaser, reported in 36 Ann. 363, identical with this case both in the law and facts.

14. A charge of a specified amount for the privilege of keeping a market is a license or tax. 34 Ann. 1050.

---

The opinion of the Court was delivered by

WATKINS, J. Defendant resists an ordinance of the town of New Iberia, exacting certain rates, fees, charges and tariffs daily from each person selling the articles mentioned or keeping butcher or market stands, *anywhere within the corporate limits* of that town, and whether within or without the market; and conferring the right to collect same

as a franchise of the market-house upon the lessee of the same, who is given the right to bring suit before the mayor of the town or any justice of the peace having jurisdiction for the collection of said daily rates and charges, and for the enforcement of the penalty of five dollars against such person as shall forfeit to the corporation or to the lessee of the corporation market-house "for each and every refusal to pay said rates, fees, tariffs and charges herein established when due," etc.

These rates and charges are the following, viz:

1. From each and every butcher's stand situated within the Main Market, and also from each and every butcher's stand outside of said Main Market and within the corporate limits of said town........................................ $0 25

2. For each slaughtered beef.............................. 60

3. For each slaughtered calf, provided the forequarters do not weigh over fifty pounds................................. 40

4. For each slaughtered calf, provided the forequarters do not weigh over fifty pounds....................... ............ 50

5. For each slaughtered hog weighing over one hundred pounds................................ ..................... 50

6. For each slaughtered sheep............................. 30

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

I.

The plaintiff alleges himself to be the lessee of the corporation market-house in the town of New Iberia, pursuant to an ordinance passed by the board of trustees on the 10th of August, 1885, and that he has complied with all the terms and conditions thereof, and that he, as such lessee, is entitled to collect all said charges and penalties as are either permitted or imposed by the corporation as rights and franchises of said market-house.

He shows that his lease began on the 1st of September, 1885, and will conclude or terminate on the 31st of August, 1886. He shows that the defendant, Simon Corrigé, "has for *several years* past carried on the business of butcher within said corporate limits at a stand or market place outside of said corporation market-house, and that for the last twelve months he has kept his said stand on the southwest side of Main street, in the upper portion thereof, as he does" at this time, and is due him $371.80 for which he prays judgment.

Defendant denies the right of plaintiff to recover on the ground that the ordinance under which he sues as lessee "is unconstitutional, illegal and unwarranted in law, because the exactions and charges it imposes is a tax or license for *revenue* \* \* and it is violative of the

Constitution and existing laws of the State * * * * and said pretended ordinance * * is unconstitutional and illegal, on the further ground that neither the law of the State nor the charter of the town of New Iberia gives the power and legal right to enforce the collection of its revenues by fine for violation of its ordinances, whenever it is attempted to collect a license or tax for *revenue*, which is the object of this illegal ordinance."

The question propounded is whether the rates, charges and fees sought to be collected, and authorized by the statute and ordinance complained of were, in the nature of a tax or license, granted under the taxing power of the State; or constituted a contribution sought to be raised in the exercise of the police power of the State, delegated by statute to the city of New Iberia.

The taxing power of the city of New Iberia is its only power for obtaining revenue by exactions levied on its citizens, and that power is limited to the *ad valorem* or property tax and the license tax.

The Constitution declares that "no parish or *municipal tax* for all purposes whatsoever, shall exceed ten mills on the dollar of valuation, etc." Constitution, art. 209.

It is obvious that if the statute or ordinance in question attempted or was intended to authorize a municipal tax beyond the constitutional limitation, to be either assessed or collected in the manner indicated, same would be undoubtedly unconstitutional and void. 36 Ann. 363, State vs. Louis Blaser; 34 Ann. 750, State vs. Patamia; 6 Ann. 515, Municipality No. 1 vs. Pauce.

## II.

Can plaintiff's right be recognized and enforced upon the theory that these rates and charges are contributions legally authorized by the State in the exercise of its *police power ?*

The Constitution provides that "the exercise of the police power of the State, shall never be abridged, etc." Const. Art. 235.

It also provides that "the police juries of the several parishes, and *the constituted authorities of all incorporated municipalities of the State, shall alone have the power of regulating the slaughtering of cattle and other live stock within their respective limits*, etc." Const. Art. 248.

In 34 Ann. 1050, Delecambre vs. Clere, this Court had the question now before us under consideration and there held : "Whilst this section conferred authority incident to police powers to regulate private markets or the selling at private stands of meats, etc., and the right even to suppress the same and to impose fines and penalties to enforce its ordinances on the subject and punish their violation, *it conferred no*

*power to levy* a tax, or license, or fee, tariff, or rate, as it is termed in this case, on butchers and other persons.

"There is a recognized distinction between the taxing power and the police power conferred on corporations. Licenses or taxes may be imposed on certain branches as a *regulation under the exercise of the latter power*, but it must plainly appear that they are imposed strictly and exclusively in aid of such power and not for the purpose of *revenue*. The rule is that mere police power, and the right to make needful regulations under it, gives no right to tax for revenue."

In Dillon on Municipal Corporations, it is announced that the authority to establish and control markets is one of the police powers that may be exercised by municipalities. Sec. 93.

"The *taxing* power is to be distinguished from the *police* power. * * The power to *license and regulate* particular branches of business or matters *is usually a police power;* but when license, fees, or exactions are *plainly* imposed for the *sole* or *main* purpose of *revenue*, they are in effect *taxes.*"

Again: "Ordinarily the mere power to license or to subject to police regulations, does not give the power to tax distinctly for revenue purposes; but it *may give* the power when such appears from the nature of the subject matter and upon the whole charter or enactment, to have been the legislative intent, but not otherwise." 2 Dillon, Municipal Corp., Sec. 609.

"In harmony with the foregoing principles it has been held that, under the authority to license and regulate draymen, etc., a municipal corporation may, by ordinance, require a license to be first taken out, and charge a reasonable sum for issuing the same and keeping the necessary record, but cannot, by virtue of this authority, *without more*, levy a tax upon the occupation itself; and under the power *to regulate*, it may make proper police regulations as to the *mode* in which the employment shall be exercised." Same, Sec. 292.

"So authority to a city to adopt rules and orders 'for the due regulation of omnibuses, stages,' etc., was held not to authorize the adoption of an ordinance requiring the payment of a tax or duty, on each carriage licensed, ranging from one to twenty dollars, according to the different kinds of carriages and stands occupied.

"This was regarded as a direct tax upon the vehicle used or its owner, and not necessary to secure the objects of the above grant of power to the city." Same, Sec. 293; 12 Wallace, 418, Ward vs. Maryland; 29 Ann. 261, Mayor vs. Gustave Roth; 32 Ann. 923, Board of Trustees of New Iberia vs. Migins; Cooley on Taxation, p. 387.

In Delecambre vs. Clere, this Court held that a charge of "twenty-five cents per day, termed a tariff or fee for keeping a *private butcher's stand* within the corporate limits of said town," was in that instance a license or tax imposed upon the calling or occupation of the defendant which was that of a butcher.

After a careful review of all the authorities cited and others at hand, we have reached the conclusion that all of the exactions demanded are within the terms "tax" and "license," and that same were manifestly intended by the mayor and trustees of the city of New Iberia to constitute a source of revenue under the apparent exercise of delegated police power, and that said statute and ordinance are unconstitutional, null and void to the extent of plaintiffs demands and that the judgment of the district court should be and the same is hereby affirmed.

This decree does not apply to that part of the ordinance which authorizes the exaction of twenty-five cents "from each and every butcher's stand situated *within* the Main Market."

Judgment affirmed.