LECHE, J.
Benjamin A. Hintz appeals from a judgment rendered on his opposition to a tableau of distribution in a partition between the heirs of his deceased wife and himself.
Mary Larmeau left several heirs, children of her former marriage with Edward P. Ridge. Her estate consisted of her interest in the second community between herself and her second husband, Hintz. The property of the second community, at the instance of the heirs of Mary Larmeau, was partitioned by licitation and the parties were referred to a notary public to complete the partition. Many items included in the distribution proposed by the officiating notary or excluded therefrom were contested by various persons, but the only ones involved in the opposition of Hintz before this court are: (1) A claim in favor of Miss Hilda Hintz for nursing, amounting to $80; (2) a claim by B. A. Hintz for mule feed, amounting to $212; and (3) a claim by B. A. Hintz alleged to be the amount of his separate funds, expended for the benefit of the community, amounting to $2,597. The district court refused to approve these three items of charges and they are- the subject of the present contest.
[1] 1. Miss Hilda Hintz, a daughter of B, A; Hintz by a former marriage, lived with her father and stepmother, and the only evidence in support of the claim is the testimony of Hintz himself who says, when asked if this claim was reasonable:
“Yes, sir; she kept the house and worked, kept with my wife there; I don’t know how long, a month or six weeks; and we took her to the hospital, and she was out there back and forth all the time.”
It does not appear from the record by what authority Hintz is acting in the prosecution of this claim, whether Miss Hilda Hintz is a minor and he is acting in her behalf as natural tutor, or if she is of age, as her agent. I-Iis testimony on the merits of the claim is not clear or convincing, and we see no reason to reverse the finding of the trial judge.
2. Hintz’ claim for mule feed is not supported by a preponderance of evidence. His testimony is contradicted by three other witnesses, and we believe that it was also properly refused by the trial judge.
3. His claim for $2,597, charged to have been expended by him, out of his separate funds for the benefit of the community, is alleged to have originated in the following manner: He says that on July 16, 1898, he bought lot 24, at No. 820 Teche street in the city of New Orleans, for the price of $250, that he was married to Mrs. Mary Larmeau on May 5, 1899, and that on April 14, 1914, he sold this lot to one Poto for the price of $2,750, out of which sum he expended $2,597 to build a double house on the community property at 413 to 415 Slidell avenue.
It is shown that Mary Larmeau, wife.of Hintz, died October 16, 1914.
Plaintiffs on the other hand allege that Hintz only paid $100 cash on July 16, 1898, when he bought lot 24, the balance of $150 having been paid by the community, subsequent to his marriage, that he sold this lot on June 20, 1899, and that he repurchased it for the benefit of the community on August 7, 1899.
Plaintiffs offered in evidence the sale of lot 24 to Hintz of date July 16, 1898, the sale of the same lot by Hintz on June 20, 1S99, the sale by Kleinkemper to Hintz of August 7, 1899, and the sale of the same by I-Iintz to Poto on April 14, 1914. The note of evidence does not state that the acts of sale were produced and filed in evidence, and a search through the record shows that they are not contained therein. When these acts were offered in evidence the following notation was entered on the note of evidence at page 68:
*1053 “It is understood that in the offers here made of the notarial acts, all the documents contained in the said notarial acts or attached thereto are a part of the offer of the acts themselves.”
While it is true that plaintiffs neither affirm nor deny the truth of the facts testified to by Hintz in regard to these transactions, we are unable to say from the vague, indefinite, and uncorroborated statements of this witness, all of which were objected to, even if it be conceded that they are admissible in evidence, what were the considerations recited in these several acts of sale, nor what w,ere the contents of the documents referred to, as contained or attached thereto. We are asked to pass upon and approve a claim amounting to $2,597, which rests for its validity upon the bare uncorroborated statement of Hintz. The district judge refused to recognize it, and we can conceive of no reason why we should reverse his finding.
[2] Plaintiffs answered the appeal of Hintz, and they pray that the judgment appealed from be amended in so far as it allows to Hintz—
“the item or items in favor of the Interstate Trust & Banking Company for money loaned by said bank to him because no legal proof was offered in support of said amount either by note or otherwise to evidence said loan, and the same should be rejected.”
They further pray that said judgment should be amended by approving their claim of $760 against the community for separate funds of their deceased mother, received by Hintz and by him expended for the community. They also ask that a claim of $800 allowed to W. L. I-Ieuer by the district court be refused, and that the judgment to that extent be also amended.
The first and second amendments prayed for by plaintiffs in their answer to the present appeal present questions of fact which seem to us to have been properly disposed of by the district judge. The loan of $100 obtained by Hintz a day or two before his wife died is positively and clearly established by his testimony, while the receipt by him of $760 of his wife’s separate and paraphernal funds is not shown with any certainty. The third amendment prayed for by plaintiffs is one affecting I-Ieuer, their coappellee, and cannot be entertained upon a prayer to amend in answer to an appeal taken by Hintz. Plaintiffs should have appealed in order to obtain that relief, for a judgment cannot be changed on appeal as between appellees. Coleman v. Cousin, 128 La. 1097, 55 South. 686.
The judgment appealed from is affirmed.